STATE, Respondent, v. ESTRADA, Appellant.

*No. State 94. Argued April 3, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 359.)

478

For the appellant there was a brief by *William M. Coffey, Dennis P. Coffey* and *Coffey, Murray & Coffey,* attorneys, and *Lynn S. Adelman* of counsel, all of Milwaukee, and oral argument by *William M. Coffey.*

For the respondent the cause was argued by *Christine M. Wiseman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. The following issues are presented on appeal:

1. Whether the trial court erred in refusing to instruct the jury on the offense of third-degree murder.

2. Whether the defendant's confession was obtained in violation of the defendant's constitutional rights.

3. Whether the trial court erred in refusing to suppress the admission of the murder weapon into evidence.

4. Whether the trial court erred in permitting the state to amend, after arraignment, the information.

5. Whether the defendant's arrest was illegal and all evidence which was a "direct product" thereof should have been suppressed.

*Jury instructions.*

The defendant contends that the trial court erred in the instant case by refusing to submit to the jury an instruction on third-degree murder, a lesser included offense of first-degree murder. We do not agree.

The law is well settled that ". . . to justify the submission for conviction of a lesser offense included in a greater crime there must be some reasonable ground in the evidence for a conviction of the lesser offense and an acquittal of the greater offense." *State v. Melvin* (1970), 49 Wis. 2d 246, 252, 181 N. W. 2d 490.

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury." *State v. Bergenthal* (1970), 47 Wis. 2d 668, 675, 178 N. W. 2d 16.

Such being the case, a determination of whether or not the refusal to submit an instruction of a lesser crime hinges upon the factual circumstances of the individual case.

The evidence educed in the instant case indicates that there existed no reasonable grounds upon which a jury

could have acquitted (found reasonable doubt) as to some element of the crime of first-degree murder. The defendant admitted that he entered the Western Union office at about 10:30 p. m. armed with a .38-calibre gun which was secreted in his pocket. Defendant forced the victim to hand over the receipts and, according to his testimony, attempted to exit the office. According to the defendant, a struggle then ensued and his pistol, prior to the struggle secreted in his pocket, "started going off." The gun in fact "went off" at least five times killing the attendant.

At trial, evidence was admitted concerning the wounds inflicted by the defendant. Such evidence indicated that the victim had been shot five times at varying distances and had died due to gunshot wounds of the chest and heart. Several of the wounds inflicted on the victim indicated that he was twice shot at point blank range. However, at least one of the wounds indicated that the victim was shot from a distance of three to eight feet. Such evidence indicates that the defendant's testimony that the gun "started going off" during the struggle is contrary to the physical evidence. *Brook v. State* (1963), 21 Wis. 2d 32, 123 N. W. 2d 535. Such physical evidence indicates that the defendant, with intent, shot the victim and caused his death.

The defendant contends that since he was perpetrating an armed robbery at the time the victim was killed, that any death that results therefrom is necessarily third-degree murder. Defendant bases this contention upon this court's statement in *State v. Carlson* (1958), 5 Wis. 2d 595, 608, 93 N. W. 2d 354:

". . .[T]hird-degree murder is a combination of a felony or attempted felony, and the fact that in the commission or attempt, a death was caused."

While the defendant's description of the crime of third-degree murder is correct, such is not controlling.

In *State v. Parker* (1972), 55 Wis. 2d 131, 197 N. W. 2d 742, this court was faced with a situation similar to the present case. Therein the defendant contended that the trial court erred in refusing to submit the lesser included crime of second-degree murder. The defendant based this contention on his testimony that he entered the tavern solely for the purpose of using the washroom. The defendant testified that, in his effort to leave, he was accosted by the bartender and fired his pistol twice in retaliation. On appeal, this court held that since the physical evidence contradicted the defendant's testimony and since his credibility concerning the entire incident is exceedingly dubious, only an "unreasonable view of the evidence" would give credence to the defendant's version of the shooting and require the submission of a lesser included crime.

In *Laster v. State* (1973), 60 Wis. 2d 525, 537, 211 N. W. 2d 13, this court likewise determined that instructions of the lesser included offenses of third-degree murder and endangering safety by conduct regardless of life need not be submitted to the jury. The basis for such a refusal rested upon the fact that the trial court determined and this court agreed that there existed no reasonable basis upon which a jury could conclude that the defendant did not entertain the requisite intent necessary for conviction of the greater crime.

The defendant does not contend there is insufficient evidence to support the jury's finding that he intentionally took the life of Terry James O'Keefe. In fact, upon review of the physical evidence in the present case, there existed no reasonable grounds upon which the jury could have acquitted defendant of first-degree murder. Such being the case, the trial court correctly refused to submit an instruction for third-degree murder.

*Admissibility of confession.*

The defendant contends that his confession should have been suppressed upon the following grounds:

(a) That the confession was elicited during an interrogation subsequent to his exercise of his right to silence.

(b) That he was denied his sixth amendment right to counsel.

(c) That the defendant's confession resulted from an excessive detention prior to his initial appearance.

(d) That the defendant's confession was the result of direct and implied promises of bail and charging concessions.

The defendant was arrested and advised of his constitutional rights by Detective Thelen and further advised of the particulars of the case. Defendant, in response to inquiry, stated that he understood his rights and began questioning Detective Thelen as to what evidence led the police to believe that he was involved. Defendant was taken to the detective bureau at about 10:45 p. m. At no time during his initial interrogation did the defendant exercise his right to silence by requesting that the interrogation cease.

Upon arrival at the detective bureau, defendant was again advised of his constitutional rights by Detective Wiesmueller. The defendant was then interrogated concerning the inconsistencies in his explanation of his whereabouts. This interrogation lasted till about midnight whereupon the defendant was booked and taken to the county jail for the night. During this second interrogation the defendant at no time informed the police of his desire to remain silent. Rather, the defendant openly engaged in a conversation with the police concerning his whereabouts and the particulars of the crime.

The defendant was placed in a lineup at the detective bureau at 8:30 a. m. on September 20th. This is a routine procedure. After appearing in the lineup, the defendant was again informed of his constitutional rights by Detective Carroll. Defendant informed Detective Carroll that he had "nothing to say" and the interrogation ceased immediately. Defendant was placed in the bullpen until the time he was taken to the district attorney's office for the purpose of issuing a complaint.

At 11:20 a. m. the defendant was taken to the office of the district attorney. E. Michael McCann advised the defendant of his rights and asked him if he would like to make a statement. The defendant informed McCann that he desired to remain silent. At this point the defendant's father who had been present in the district attorney's office asked for permission to talk to his son. This request was granted and a conversation between them ensued. After this conversation was completed, the defendant's father indicated his son wished to make a statement. Defendant was then asked as to whether he in fact desired to make a statement. The defendant answered yes.

The defendant moved to suppress his statement at trial. The trial court held an extensive *Goodchild* hearing and ruled that the statements made were voluntary, that there were no threats or promises nor was there any physical or psychological force used against him. The court also found that the defendant understood the nature of the proceedings, that he was not under the influence of drugs and that the periods of interrogation were short.

The defendant contends that the confession herein should have been suppressed on the basis that after

he had expressed an intention to remain silent during the initial interview at 8:35 a. m. on September 20th all interrogations should have ceased and that any statement resulting from a future interrogation was necessarily coerced and should have been suppressed. The defendant relies on the decision of *Miranda v. Arizona* (1966), 384 U. S. 436, 473, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes the privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."

as support for this contention.

While *Miranda* does require that, upon exercise of the defendant's fifth amendment privilege, the interrogation must cease, *Miranda* does not explicitly state that the defendant may not, after again being advised of his rights, be interrogated in the future. Defendant's reliance upon *United States v. Crisp* (7th Cir. 1970), 435 Fed. 2d 354, notwithstanding, it is distinguishable from the case at bar. In *Crisp* the record was clear that the defendant, upon being informed of his rights, indicated that "he was unwilling to discuss any activities on his part concerning the bank robbery or any bank robbery in which he might be involved." Upon being so informed, the agent refused to discontinue that interrogation and continued to question the defendant as to his activities before and after the bank robbery. The

defendant, faced with the unrelenting and improper questioning of the F. B. I. agent, relented and confessed.

In the instant case such continued interrogation after the defendant had expressed his intent to remain silent was not present. The police respected the defendant's invoking of his fifth amendment right and ceased interrogations. No interrogation took place after the defendant's initial exercise of his rights at 8:35 a. m. on September 20th. It was three hours later in the district attorney's office that the defendant was readvised of his constitutional rights and asked if he desired to make a statement. This action by the district attorney could hardly be considered inquisitional for, not only was the defendant's father present, but upon being advised by the defendant that he intended to remain silent, no interrogation followed. It was only after a discussion with his father did the defendant decide to waive his right to silence and volunteer his statement.

The present case is more analogous to the recent decision of the second circuit in *United States v. Collins* (2d Cir. 1972), 462 Fed. 2d 792. In *Collins* the defendant was interrogated on six different occasions over a twenty-four hour period. Prior to such interrogation by several different F. B. I. agents, the defendant was advised of his constitutional rights. The defendant exercised those rights and each time the interrogation ceased. The sixth time the defendant was advised, he stated he had a statement to make.

On appeal, the court affirmed the district court's admitting the confession into evidence. The court determined that *Miranda* permitted the renewal of interrogation under proper circumstances.

"So long as such reconsideration is urged in a careful, noncoercive manner at not too great length and in the context that a defendant's assertion of his right not to

speak will be honored, it does not violate the *Miranda* mandate." *Supra,* at page 797.

As long as new warnings are given and there is a reasonable basis for inferring that the suspect has changed his mind, the confessions are constitutionally antiseptic.

In the case of *People v. Gary* (1972), 31 N. Y. 2d 68, 286 N. E. 2d 263, the New York Court of Appeals ruled that the defendant's confession, obtained as a result of a subsequent request for a statement after the *Miranda* warnings had been given, was admissible.

"The narrow issue presented by this case, then, is whether the Assistant District Attorney was precluded from inviting the defendant to make a statement because, an hour before, a like request by a police officer had been declined. Neither *Miranda* nor any broader constitutional mandate prohibits a subsequent request, made otherwise than in the course of continued importunity or coercive interrogation in the guise of a request for reconsideration." *Supra,* at page 264.

The trial court found in the instant case that the defendant's statement was voluntarily made. Since the procedure herein involved is constitutionally antiseptic and the trial court's findings are not contrary to the great weight of the evidence, we conclude the trial court did not err in refusing to suppress the confession.

The defendant next contends that his confession should have been suppressed in that it was received in violation of his sixth amendment right to counsel and bases his contention upon the following statement he allegedly made when first informed of his rights the evening of his arrest:

". . . [t]hat his wife would call someone as soon as he had this thing straightened out."

Defendant contends that this statement was an affirmative request that counsel be present at all interrogations.

The trial court, in response to the above contention, took lengthy testimony during the *Goodchild* hearing and found that:

"[F]rom the total context of all the testimony on the occasions when there was interrogation or attempted interrogation of this defendant by the police, that his responses were freely and voluntarily made . . . Without any constitutional contamination, in full compliance with the *Miranda* formula, and understandingly made by the defendant . . . ."

These findings are not contrary to the great weight or clear preponderance of the evidence and must be affirmed.

This court has previously held that a defendant's request for appointment of counsel must be affirmatively made. *State v. Mathis* (1968), 39 Wis. 2d 453, 459, 460, 159 N. W. 2d 729. Also, it is a question of fact as to whether the defendant did in fact request counsel. Ambiguous statements such as that made by the defendant must be interpreted through reference to many facts and circumstances such as the defendant's knowledge of his rights and his future exercise of them and the actions of the police in regards to the defendant's exercise of those rights.

The defendant herein, after being advised of his rights including the right to remain silent and the right to the presence of an attorney, stated "that his wife would call someone as soon as he had this thing straightened out." If that had been intended by the defendant as exercising his right to the presence of counsel, his actions immediately thereafter are extremely inconsistent therewith. The defendant, instead of remaining silent until such a time as an attorney be present, commenced a discussion with the police concerning the evidence that they had which led them to believe he was involved.

Immediately thereafter the defendant was taken to the detective bureau where he was again advised of his rights

including the right to remain silent and to the presence of an attorney. Again the defendant took no action to exercise these rights. Rather he co-operated in the interrogation that ensued. Again the following day the defendant was twice advised of his right to the presence of an attorney and, on each occasion, failed to request the presence of an attorney.

Likewise, the actions of the defendant on September 20th indicated that he was then and previously aware of his rights; aware that the police fully intended to honor these rights, but took no action to so exercise the right to counsel. Twice after being apprised of his rights, the defendant expressed a desire to remain silent. This request was honored and all interrogation ceased. At no time, however, did the defendant make any attempt to exercise his right to the presence of an attorney even though he possessed the knowledge of its existence and that it would be honored by the police.

At trial Judge STEFFES spent time attempting to convince the defendant of the value of legal counsel. Defendant rejected the advice. Despite counsel, he insisted on filing at least eight pro se motions. These attitudes explain his failure to request counsel after his arrest and interrogation. Such evidence is sufficient to support the findings of the trial court.

The defendant contends that his detention of approximately fourteen hours prior to his initial appearance in court was excessive and that any confession that resulted therefrom should have been suppressed. The law is well settled that any statement obtained from a defendant during a period of *unreasonable* detention is inadmissible in evidence. The determination of whether the detention was unreasonable rests on the facts of the individual case.

If the detention was solely for the purpose of "sewing up" a case by extracting a confession or culpable state-

ments to support the arrest or guilt, the detention is unreasonable. *Phillips v. State* (1966), 29 Wis. 2d 521, 139 N. W. 2d 41. If, however, the period of detention was not unreasonably lengthy and its purpose was not directed at "sewing up" the case, there is no infirmity.

Reviewing the record in the present case, it is obvious that the detention of fourteen hours including eight hours of sleep and one hour of visiting with relatives was not unreasonably long and engaged in solely to sew up the case. Barely two hours were spent in interrogation. We find no merit to this contention.

The defendant finally contends that his confession was involuntarily made and the product of promises of bail and charging concessions on the part of the state. Defendant's argument is founded entirely upon his own testimony and that of his father. The testimony of both was determined to be inherently incredible by the trial court in whose function that determination properly exists when a hearing is held outside the presence of the jury. *State v. Pires* (1972), 55 Wis. 2d 597, 603, 201 N. W. 2d 153. A review of the evidence indicates the correctness of this finding.

*Amendment of information.*

The defendant contends that the trial court erred in permitting the state to amend the information to include the element of intent after the defendant had been arraigned and pled not guilty to the original information. The basis of this contention is that the initial information was insufficient to charge the crime of first-degree murder and that the court's action in permitting the state to amend that information effected a substantial change thereto to the prejudice of the defendant. Such contentions are without merit.

The original information in the present case was exact in form to that recently approved by this court in *Clark v. State* (1974), 62 Wis. 2d 194, 214 N. W. 2d 450. As such, the original information was sufficient to charge the crime of murder and provide the court with subject matter jurisdiction. Since the information herein did allege an offense known to the law, it was a valid information. The record also indicates that defendant, without any objection to the sufficiency of the information, entered a plea to the original information. By entering a plea of not guilty at his arraignment, the defendant submitted to the jurisdiction of the circuit court over his person, *State v. Chabonian* (1972), 55 Wis. 2d 723, 201 N. W. 2d 25.

The initial information being jurisdictionally valid and there being no contention of an absence of notice, the permitted amendment effected no substantial change in the information. Therefore, the trial court correctly refused to dismiss the information.

"(8) No complaint, indictment, information, process, return or other proceedings shall be dismissed or reversed for any error or mistake where the case and the identity of the defendant may be rightly understood by the court; and the court may order an amendment during such defects." Sec. 955.09 (8), Stats. 1967.

and allowed the state to amend the information to include the phrase "with intent to kill."

The above statute expresses the same theory pronounced by this court in *Martin v. State* (1973), 57 Wis. 2d 499, 506, 507, 204 N. W. 2d 499, that a charge is sufficiently stated if the accused can enter a plea and prepare an adequate defense.

There was no doubt expressed by the trial court or by the defendant that the charge was one of first-degree murder against the defendant. The defendant entered a plea of not guilty to first-degree murder.

*Admissibility of weapon.*

The defendant, after he made a statement to the district attorney, E. Michael McCann, entered into a discussion with the police concerning the location of the murder weapon. The defendant told Detective Carroll that he dismantled the murder weapon and dropped it in a series of sewers on Teutonia Avenue, north of Hope Street, on the right-hand side. Detective Carroll then asked the defendant if he would be willing to accompany police and locate the weapon for them, to which defendant assented. Carroll left McCann's office while defendant was still there and returned to the county jail at 1:30 p. m. for the defendant. At that time Carroll did not reiterate the *Miranda* warnings to the defendant, nor did the defendant inform him that he had been in court and requested the appointment of legal counsel.

The defendant contends that this evidence—the weapon —should have been suppressed in that its location was discovered through the defendant in violation of his sixth amendment right to counsel, citing *Massiah v. United States* (1964), 377 U. S. 201, 84 Sup. Ct. 1199, 12 L. Ed. 2d 246. The state agreed with defendant's interpretation that *Massiah* forbids the use of incriminating statements "deliberately elicited by law enforcement authorities" subsequent to a defendant's initial appearance and request for counsel. However, the state contends, and correctly so, that *Massiah* cannot be applied to the case at bar because the location of the gun was elicited prior to defendant's appearance in court and request for counsel. Furthermore, the defendant had a duty to inform Detective Carroll that he had just requested the appointment of counsel. Since defendant failed to do so and willingly accompanied police to the location his right was waived.

*Validity of arrest.*

The final defense contention is that since the defendant was arrested without a warrant and, in their opinion, in absence of exigent circumstances, that pursuant to the doctrine of *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441, all evidence that resulted from said illegal arrest should have been suppressed.

The fact, however, that the police did not procure an arrest warrant—assuming the defendant's allegation that there existed no exigent circumstances as being true—does not necessarily warrant a determination of a constitutional violation. The courts that have considered the question of arrest without warrant have determined that a warrant is not a prerequisite to a lawful arrest and that a warrantless arrest is valid upon a showing of probable cause.[1] Within the limits of the fourth amendment, the law of the state determines the validity of a warrantless arrest. *State v. Taylor* (1973), 60 Wis. 2d 506, 512, 210 N. W. 2d 873. We must, therefore, determine the validity of a warrantless arrest under Wisconsin law.

Prior to the enactment of the revised Criminal Procedure Code, the validity of the arrest without a warrant for a felony was determined under common law.[2] Thereunder, an arrest without a warrant for a felony was valid if there existed probable cause to believe the person

[1] *Sullivan v. Murphy* (D. C. Cir. 1973), 478 Fed. 2d 938; *United States v. Morris* (5th Cir. 1973), 477 Fed. 2d 657; *United States v. Miles* (3d Cir. 1972), 468 Fed. 2d 482; *United States v. Wilson* (5th Cir. 1971), 451 Fed. 2d 209; *Ray v. United States* (9th Cir. 1969), 412 Fed. 2d 1052; *United States v. Hall* (2d Cir. 1965), 348 Fed. 2d 837, certiorari denied, 382 U. S. 947, 86 Sup. Ct. 408, 15 L. Ed. 2d 355. *See also Ker v. California* (1963), 374 U. S. 23, 83 Sup. Ct. 1623, 10 L. Ed. 2d 726; *United States v. Rabinowitz* (1950), 339 U. S. 56, 70 Sup. Ct. 430, 94 L. Ed. 653; *Johnson v. United States* (1948), 333 U. S. 10, 68 Sup. Ct. 367, 92 L. Ed. 436.

[2] *See:* Sec. 968.07 (1) (d), Stats.

arrested had committed a felony. *Stelloh v. Liban* (1963), 21 Wis. 2d 119, 124 N. W. 2d 101; *State v. Phillips* (1952), 262 Wis. 303, 55 N. W. 2d 384. Thus, if there exists probable cause for the defendant's arrest, the arrest is valid and without the proscription of *Wong Sun v. United States, supra.*[3]

In the instant case the police had probable cause to arrest the defendant for the armed robbery of the Western Union office and the murder of Terry James O'Keefe.

Detective Thelen testified at an evidentiary hearing on a motion to suppress that he was informed by another detective that information had been received as to the involvement of the defendant and Clarence (C. T.) Webb in the crimes in question. Thelen contacted Detroit, Michigan, police after being informed Webb was wanted for murder in Detroit. This fact was corroborated by Michigan authorities. Thelen was also informed—testimony being taken as to the credibility and reliability of the informers—that defendant and Webb had solicited the informants' help in robbing the Western Union office. The pair described the ease with which they expected to pull the robbery and brandished a .38-calibre revolver.

The informants also identified the fabric on a button recovered at the scene as being the same as that on defendant's suit. They likewise identified the eyeglasses recovered as being similar to defendant's. One informant identified the defendant from a group of photographs.

Detective Wiesmueller also testified that he had received information on the evening of September 15, 1969, from a reliable informer—testimony elicited to that effect—that corroborated the information received by Thelen.

Such testimony is sufficient to support a finding of probable cause. This court has defined probable cause as:

---

[3] *State v. Wallace* (1973), 59 Wis. 2d 66, 207 N. W. 2d 855.

"Probable cause exists if the facts and circumstances known to the police officer warrant a prudent man in believing an offense has been committed. [Citing *Henry v. United States* (1959), 361 U. S. 98, 80 Sup. Ct. 168, 4 L. Ed. 2d 134.] Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime." [4]

We conclude the arrest was valid and the evidence resulting therefrom is not constitutionally infirm.

*By the Court.*—Order affirmed.

---

[4] *Kluck v. State* (1967), 37 Wis. 2d 378, 389, 155 N. W. 2d 26.