**Marvin Louis MADDEN, Petitioner,**

v.

**Thomas ISRAEL, Respondent.**

**Civ. A. No. 77-C-163.**

United States District Court,
E. D. Wisconsin.

Nov. 7, 1979.

**1236**

Charles Bennett Vetzner, Asst. State Public Defender, Madison, Wis., for petitioner; Charlene R. Bohl, Madison, Wis., of counsel.

Bronson C. LaFollette, Atty. Gen., and Chris C. Heikenen, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The petitioner Marvin Louis Madden has filed an application for a writ of habeas corpus challenging his conviction in Dane County Circuit Court on February 9, 1973, of two counts of first degree murder, in violation of §§ 940.01(1) and 939.05(2), Wis. Stats., and one count of armed robbery of an individual, in violation of §§ 943.32(1)(a) and (2) and 939.05(2), Wis.Stats. The peti-

tioner was sentenced to two concurrent terms of life imprisonment for the murders and an indeterminate consecutive term of not more than thirty years for the armed robbery. On May 6, 1975, the convictions were affirmed by the Wisconsin Supreme Court. *State v. Shears*, 68 Wis.2d 217, 229 N.W.2d 103 (1975). The petitioner subsequently filed his application with this court. For the following reasons the application will be denied.

The petitioner challenges his conviction on four grounds: (1) that he was denied his constitutional right to a speedy trial; (2) that he was prejudiced by the trial court's refusal to instruct the jury on the lesser included offense of third degree murder, and that there was insufficient evidence to convict on first degree murder; (3) that § 939.05, Wis.Stats., is unconstitutional because it shifts the burden of proof on intent, and also that petitioner was denied due process because he was not notified of which subsection of the statute he would be prosecuted under; and (4) that the trial court's denial of his request for severance from his codefendants deprived him of his right to a fair trial. The Court will consider each ground separately below.

The facts of this case are set forth in *State v. Shears*, supra, at 222–227, 229 N.W.2d 103. Essentially, the State alleged that the petitioner, his codefendants Danny Shears and Jesse James Ford III, and two other persons named Elgie Johnson and Eugene Sills planned and participated in the robbery of Harold's Club, a tavern in the Town of Burke, Dane County, Wisconsin, on January 13, 1972; that in the course of the robbery the bartender, James Rehbein, was shot and killed, and a patron, Lester Hanson, was shot and died two months later of his injuries; and that during the robbery of the tavern another patron, E. Robert Currie, was also robbed.[1] Eugene Sills entered into a plea agreement with the State, pursuant to which he pled to one count of

---

1. Madden and his codefendants were charged with the robbery of Currie but not with the robbery of Harold's Club.

armed robbery in exchange for his testimony at the trial of Madden, Shears, and Ford. In his testimony Sills implicated all three defendants in the planning of and participation in the offenses charged by the State.

Jesse James Ford III also testified at the joint trial, admitted to participation with Madden and Shears in planning the robbery, but claimed to have withdrawn from the agreement to rob the tavern just prior to the commencement of the actual robbery. See § 939.05(2)(c), Wis.Stats. All three defendants were convicted of two counts of first degree murder and one count of armed robbery. The defendant Ford was also convicted of one count of concealing identity, in violation of § 946.62, Wis.Stats.

*The Speedy Trial Claim*

Madden was arrested on January 13, 1972. The trial commenced on January 22, 1973. In the interim, Madden made an initial appearance on January 13, 1972; on January 18 a criminal complaint was issued, and on January 22 the preliminary hearing began. Bar patron Lester Hanson died on March 25 and a second amended criminal complaint was issued against Madden on April 28 charging him with Hanson's murder. The preliminary hearing was scheduled for May 2 and then rescheduled for May 18. On June 1, Madden was arraigned. In July, codefendant Eugene Sills made a formal record of his plea agreement with the State, and in August codefendant Danny Shears was extradited from Illinois. A hearing on the State's motion to consolidate the trials was held on September 5, and on September 11 the defendants were jointly arraigned.

■ At a conference held before Judge Bardwell on November 16, 1972, the judge, out of an expressed concern for the defendants' speedy trial rights, offered them a trial date of December 4, 1972, but none of them requested the date:

> "THE COURT: We are just asking whether you are requesting a firm date of December 4th. I am just going through it because I said in fairness to those who have been incarcerated a long time, I would attempt to get that on

December 4th definitely if anybody is really demanding it. There haven't been any requests for immediate trial by either side.
>
> "MR. BURKE: [Madden's counsel]: No, I am not demanding it." (Transcript of November 16, 1972, conference at page 5.)

Madden claims, however, that he wrote to the judge on May 16, 1972, requesting a speedy trial and that his request was ignored. There is no evidence in the State record to support this claim. Furthermore, since it was not presented to the Wisconsin Supreme Court, to the extent his speedy trial claim is based on an express demand for trial, Madden has not exhausted state remedies. See 28 U.S.C. § 2254(b); *State v. Shears*, 68 Wis.2d 217, 233, 229 N.W.2d 103 (1975).

■ In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court stated:

> "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192.

With regard to the factor of prejudice, the Court stated that it—

> " * * * should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the

entire system. * * * " 407 U.S. at 532, 92 S.Ct. at 2193.

Following its review of the State court record in this case in light of the factors set forth in *Barker*, the Court on balance finds that Madden was not deprived of his constitutional right to a speedy trial despite his twelve-month incarceration between arrest and trial.

No particular reason for the length of the delay appears from the record beyond the general complexity of preparing for trial of a first degree murder case based, at least initially, primarily on circumstantial evidence and involving multiple defendants. The Court notes, however, that there were numerous pretrial proceedings, including motion hearings, and thus that the delay was not attributable solely to crowded dockets or to inattention by the courts or the prosecutor. There is no evidence of intentional delay by any person, and no evidence properly before this court of a speedy trial demand by any defendant.

As for the last factor set forth by the Supreme Court, prejudice to the defendant, Madden did spend twelve months in jail prior to trial which no doubt caused him substantial anxiety and concern. There is no evidence, however, that "the most serious" of his interests which the speedy trial right was designed to protect, 407 U.S. at 532, 92 S.Ct. 2182, that of preserving his defense, was affected by the delay. Madden suggests that he was denied the right to an effective cross-examination of one witness who died prior to trial. Since, however, the witness was Lester Hanson, the bar patron who was one of the victims of the robbery incident, since a transcript of Hanson's testimony under oath taken in the hospital with Madden's counsel participating was admitted at trial, and since Hanson died less than two and one-half months after Madden's arrest, the Court is not particularly impressed with this claim of prejudice. See *United States v. Joyce*, 499 F.2d 9 (7th Cir. 1974).

The Seventh Circuit has held that a twelve-month delay is not by itself so severe as to constitute a denial of the right to a speedy trial. *United States v. Joyce*, supra, at 20–21. In *Barker v. Wingo*, supra, 407 U.S. at 534, 92 S.Ct. 2182, the Supreme Court held that a ten-month period of incarceration prior to trial did not require release of the defendant. Madden has not presented any additional factors which would distinguish his case from the two just noted, and therefore the Court finds that he was not denied his right to a speedy trial.

*Sufficiency of the Evidence—First Degree Murder*

■ Madden contends that there was insufficient evidence of intent in the record to support his convictions for first degree murder, and therefore that the trial court's refusal to instruct the jury on third degree murder denied him his right to a fair trial by jury because of the substantial probability that a jury, rather than letting go free a defendant whom it believed to have committed some crime, would convict him of the crime charged even though not supported by the evidence.

In *United States ex rel. Parker v. Gray*, 390 F.Supp. 70, 73 (E.D.Wis.1975), aff'd 530 F.2d 980 (7th Cir. 1976), wherein the petitioner challenged his conviction for first degree murder on the ground that a second degree murder instruction should have been submitted to the jury, this Court stated:

"While failure to submit the lesser offense to the jury where there is evidence to support a finding of guilt on the lesser offense is held to be reversible error, *United States v. Comer*, 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970); *Zenou v. State*, 4 Wis.2d 655, 91 N.W.2d 208 (1958), there is no authority for the proposition that failure to instruct and submit a verdict on a lesser offense is a denial of the right to a trial by jury. Petitioner had a jury trial on the crime charged, first degree murder, and that is all the Constitution requires. If the jury found there was no intent to kill as required by § 940.01, it would have to acquit the defendant of first degree murder."

See also *United States ex rel. Rooney v. Housewright*, 568 F.2d 516, 524 (7th Cir. 1977); *James v. Reese*, 546 F.2d 325 (9th

Cir. 1976); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *Poulson v. Turner*, 359 F.2d 588, 591 (10th Cir. 1966), cert. denied 385 U.S. 905; *Gist v. State of Oklahoma*, 371 F.Supp. 541 (E.D.Okla.1974). The Court also stated in *United States ex rel. Parker*, supra, at 73, that even assuming a right to have lesser offenses submitted to the jury, the Wisconsin Supreme Court had reviewed the evidence and found no reasonable ground upon which the jury could have found that petitioner did not intend to kill his victim, and therefore that there was no error, constitutional or otherwise, in the trial court's failure to instruct on second degree murder.

In *Jackson v. Virginia*, —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that a federal district court in reviewing a habeas corpus application challenging the sufficiency of evidence to convict must make an independent review of the record to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt:

"After [*In re*] *Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS*, 385 U.S. 276, 282 [, 87 S.Ct. 483, 486, 17 L.Ed.2d 362]. Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 U.S. 356, 362 [, 92 S.Ct. 1620, 32 L.Ed.2d 152]. * * *" (—— U.S. at ——, 99 S.Ct. at 2789.

The Court also stated that while a state appellate court decision rejecting a challenge to the sufficiency of evidence is entitled to deference by the federal courts (slip opinion at 14 n. 15 and 15), nevertheless the "federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." (—— U.S. at ——, 99 S.Ct. at 2789.)

Under Wisconsin law, third degree murder "'is a combination of a felony or attempted felony, and the fact that in the commission or attempt, a death was caused.'" *State v. Estrada*, 63 Wis.2d 476, 482, 217 N.W.2d 359, 363 (1974), quoting *State v. Carlson*, 5 Wis.2d 595, 608, 93 N.W.2d 354 (1958). "* * * [T]he mere fact that a defendant was fortuitous enough to be committing a felony at the time he intentionally caused the death of a human being is not enough to justify an instruction on third-degree murder." *State v. Shears*, 68 Wis.2d 217, 243, 229 N.W.2d 103, 116 (1975).

The Wisconsin Supreme Court, after reviewing the evidence in the *Shears* case, found at 243–245, 229 N.W.2d at 116–117:

"* * * [I]t is obvious that it would have been unreasonable to instruct the jury that they might find the homicide of James Rehbein to have been third-degree murder. The testimony of Randall Stapelman, a patron, was that the gunman was leaning over the bar and Rehbein was backing away when he was shot. Robert Currie, also a patron, testified that after hearing shots he saw Rehbein back up with his arms up and then Currie heard more shots. Rehbein was shot three times at close range. One bullet passed directly through his heart which was proved to be the fatal shot.

"At trial an attempt was made to show that Rehbein may have been killed unintentionally in a struggle. However, there was no testimony regarding any struggle between Rehbein and his assailant and one witness expressly stated that he saw no struggle. Under these circumstances, it would have been unreasonable to conclude no intent to kill Rehbein existed.

"The evidence is sufficient as well to have permitted the jury to convict the defendants of the first-degree murder of Lester Hanson.

"Hanson was shot by one of the conspirators, evidence showed, when he tried to sneak out of the bar area to get to a phone in the kitchen. * * *

"Obviously, it must be inferred, Hanson intentionally was shot to prevent him from leaving. Immediately after this shooting, Ford was seen standing over Hanson. The assailant could have prevented Hanson's departure without firing into a vital zone. Just prior to the shooting of Hanson, one of the conspirators threatened, 'We have already killed one person, and we will kill another.'

"Hanson's testimony established that he was shot in the lower abdomen as he was trying to sneak to the kitchen. That he heard some people coming near him and one said 'Should we get this one too?' The reply was 'No, he's gone now anyway.' From this testimony the jury could have inferred the intentional killing of Lester Hanson.

"There was testimony by Eugene Sills that his gun accidently discharged approximately the same time that Hanson was shot. However, he further testified that his gun discharged after he saw Hanson fall and observed Ford standing over him. The conjecture of an accidental shooting could not reasonably support an instruction on third-degree murder.

"Although the trial court expressed some doubt as to whether or not a third-degree murder instruction should have been given to the jury, as to the Hanson murder, we think the trial judge properly denied the request of an instruction of third-degree murder. There was no reasonable doubt as to the requisite intent of Hanson's assailant."

This Court has made an independent review of the state court record. Based on that review, it is persuaded that the Wisconsin Supreme Court's characterization of the evidence is fair and correct when the evidence is reviewed in the light most favorable to the prosecution. Therefore, the Court adopts as its own the statement of the evidence made by the Wisconsin Supreme Court and set forth above, and it finds, first, that there was sufficient evidence of intent to allow the jury to have found the petitioner guilty of first degree murder with respect to both victims, and, second, that there would have been no reasonable basis on which the jury could have found a lack of intent. Consequently, there was no error in the trial court's failure to instruct on third degree murder.

*The Wisconsin Parties-to-a-Crime Statute*

The petitioner was convicted after trial of two counts of first degree murder in violation of §§ 940.01(1) and 939.05(2), Wis. Stats., and one count of armed robbery in violation of §§ 943.32(1)(a) and 939.05(2), Wis.Stats. Section 939.05 provides:

"(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it * * *. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. * * * "

There was no evidence presented at trial nor did the State argue that Madden "directly committed" the murders, i. e., that he actually fired any of the shots which resulted in the deaths of the two murder victims.

Madden claims that he was denied due process because the State failed to apprise him of the subsection of § 939.05(2) under

which it planned to proceed,[2] and because the use of § 939.05(2) in conjunction with a charge of first degree murder relieved the State of its burden of proving intent. The claims are without merit.

■ Section 939.05, Wis.Stats., is similar to 18 U.S.C. § 2, the use of which has repeatedly been upheld by the United States Court of Appeals for the Seventh Circuit. *Levine v. United States*, 430 F.2d 641 (7th Cir. 1970); *Glass v. United States*, 328 F.2d 754 (7th Cir. 1964); *United States v. Kramer*, 236 F.2d 656 (7th Cir. 1956); *United States v. Carengella*, 198 F.2d 3 (7th Cir. 1952), cert. denied 344 U.S. 881, 73 S.Ct. 179, 97 L.Ed. 682. The statute does not shift the burden of proof. It merely provides that anyone concerned in the commission of a crime may be charged with other crimes which are a natural and probable consequence of the intended crime and are committed in pursuance of the intended crime. Thus, the trial court in this case properly instructed the jury on the element of intent to commit murder and on the State's burden of proof. The application of § 939.05(2), Wis.Stats., to connect all of the defendants with those crimes was not error.

■ The charging of the petitioner under § 939.05 generally, and then under § 939.05(2)(c) only, was also not error. It is not essential to charge a defendant specifically under an aiding and abetting statute in order to convict under that statute, *Levine v. United States*, supra, nor is it necessary that the State specify the subsection of the statute under which it intends to proceed. *Mabra v. Gray*, 518 F.2d 512, 514 n. 3 (7th Cir. 1975), cert. denied 423 U.S. 1023, 96 S.Ct. 466, 46 L.Ed.2d 397. Furthermore, in this case, at the close of the State's case, the Court notified the defendants, without objection from them, that it intended to instruct the jury on all subsections of § 939.05(2). (Tr. Vol. IX at 129–130) Thus, they had notice that the State was not proceeding only under § 939.05(2)(c), and any claim which they might have had aris-

ing out of the addition of instructions on § 939.05(2)(a) and (b) was waived by their failure to object. § 972.10(5), Wis.Stats.; *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

*The Denial of Severance*

Madden was jointly tried with Jesse James Ford III and Danny Shears. He claims four errors as a result of their joint trial: (1) that Shears was permitted to strike the only black juror remaining on the panel after the State had exercised one of its strikes to remove the only other black panel member; (2) that the joint trial of a complex action involving three black defendants in a predominantly white community created a substantial possibility of guilt by association; (3) that Ford presented a completely antagonistic defense which was mutually exclusive with Madden's defense; and (4) that Ford's attorney was permitted to comment on Madden's failure to testify.

■ While no identifiable community group may be purposefully and systematically excluded from participation in jury service, a defendant is not entitled to any particular proportion or number of jurors of his own race on the jury which hears his case. It is his burden to demonstrate purposeful discrimination based on race, and the striking of members of one race from a jury panel in one case is not sufficient evidence of discrimination. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Petitioner in this case has made no showing of discriminatory purpose. Since he has no right to trial by a jury containing black members, his first contention is without merit.

■ Petitioner has also not made a sufficient showing of guilt by association to implicate his rights under the Fourteenth Amendment. Granted that the trial was complex and that Madison, Wisconsin, is a predominantly white community, still the petitioner "must make a strong showing of

---

**2.** The original complaint charged Madden under § 939.05 generally without specification of a subsection. The amended complaint filed on

April 28, 1972, charged him under § 939.-05(2)(c). The trial court instructed the jury on § 939.05(2)(a), (b), and (c).

prejudice." *United States v. Kahn*, 381 F.2d 824, 839 (7th Cir. 1967), cert. denied 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661. There is no evidence in the record indicating that prejudice against the defendants because of their race contributed to the jury verdict. Furthermore, in the opinion of this Court, the evidence of guilt was clear and substantial. As for guilt by association arising out of the complexity of the case, all three defendants were charged with concealing identity, in violation of § 946.62, Wis.Stats., but only Ford was convicted on that charge. Shears' and Madden's acquittals on that charge are indicative of the jury's ability to separate the evidence presented as to each defendant and each count of the complaints. *United States v. Hutul*, 416 F.2d 607, 620 (7th Cir. 1969), *cert. denied sub nom. United States v. Sacks*, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970).

■■■■■ The claim of antagonistic defenses is somewhat more substantial. Madden entered a plea of not guilty to each count of the amended complaint and he did not testify or present witnesses. Ford entered a plea of not guilty also; his defense, however, depended on the theory that he had withdrawn from the conspiracy while in the parking lot of Harold's Club and prior to the other defendants' entry into the tavern. See § 939.05(2)(c), Wis.Stats. Thus, Ford admitted the existence of an illegal agreement between himself, Madden, Shears, and others, but he denied participating in the execution of the agreement and denied any knowledge of what transpired inside the tavern where Rehbein and Hanson were shot and another patron, E. Robert Currie, was robbed.

In *United States v. Ziperstein*, 601 F.2d 281 (7th Cir., May 22, 1979), the court of appeals discussed the circumstances under which presentation of mutually antagonistic defenses will require severance:

"This circuit has a well-established standard for determining when the claim of 'mutually antagonistic' defenses will mandate a severance. Such 'mutual antagonism' only exists where the acceptance of one party's defense will preclude the acquittal of the other. *United States v. Kahn*, 381 F.2d 824, 841 (7th Cir.), *cert. denied*, 389 U.S. 1015 [, 88 S.Ct. 591, 19 L.Ed.2d 661] (1967). *See also United States v. McPartlin*, [595 F.2d 1321, 1333, 1334] (7th Cir. 1979). An example of 'mutually antagonistic' defenses is presented in *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962). In *De Luna* one defendant claimed that he came into possession of narcotics only when the other defendant saw the police approach and shoved the drugs into his hands. The other defendant, however, denied having ever possessed the drugs and claimed that they had always been in the possession of the first defendant. In a case such as *De Luna*, where someone must have possessed the contraband, and one defendant can only deny his own possession by attributing possession and consequent guilt to the other, the defenses are antagonistic.

"This is completely different from a case, such as the one before us, where one defendant denied participation in a criminal conspiracy while admitting, gratuitously from the viewpoint of his own defense, the existence of a conspiracy. Such a 'non-participatory' defendant can be acquitted even though no conspiracy is ultimately determined to have been in existence. In short, the defendant's non-participation adds nothing to the characterization of the acts in which the other defendants participated. * * * In [*United States v.*] *Hutul* [416 F.2d 607 (7th Cir. 1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970)] we noted that this simple antagonism of defenses did not automatically require severance. *Id.* at 620. * * * [I]n this case, the alleged non-participation of defendant Wu in any conspiracy did not mandate any conclusion, regardless of Wu's statements to the contrary, that an illegal conspiracy in fact existed." (at 285–286.)

See also *United States v. Buschman*, 527 F.2d 1082 (7th Cir. 1976); *United States v. Blue*, 440 F.2d 300 (7th Cir. 1971), cert.

denied 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68; *United States v. George*, 477 F.2d 508, 515 (7th Cir. 1973), cert. denied 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973); *United States v. Joyce*, 499 F.2d 9, 21 (7th Cir. 1974), cert. denied 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306.

In this case, too, had the jury chosen to believe Ford's defense and to acquit him, it need not then necessarily have found Madden guilty of the offenses charged, particularly since Ford did not testify as to what occurred inside the tavern. Furthermore, to the extent Ford's testimony did implicate Madden, there was substantial corroborating evidence. Thus, the testimony of Gail Tolson, Lumumba Kenyatta, and Eugene Sills implicated Madden in the planning of the Harold's Club incident; the testimony of Eugene Sills and various bar patrons implicated him in the execution of the incident; and the testimony of various police officers who apprehended him shortly after the incident placed him in possession of a large amount of cash and thirty-six IOU's and one check made out to Harold's Club. A defendant is not entitled to severance simply because another of his codefendants takes the stand and implicates him in the conduct with which he is charged. *United States v. Joyce*, supra.

The Court noted in *United States v. Ziperstein*, supra, that "even if the nature of the defenses themselves did not require a severance, it is still possible that the defendants could have been prejudiced by the actual conduct of a co-defendant's defense." (at 286.) Madden claims as error in this case a remark made during closing argument by Ford's counsel who discussed some of the evidence which implicated Madden in the incident at the tavern and then said:

"I don't know what Marvin did with the hat. I don't know what Marvin did with the money. * * * Only Marvin Madden knows what he did with his hat. We haven't heard." (Tr. Vol. XI at 51)

At the conclusion of that argument Madden's lawyer objected to the remark as being a violation of Madden's Fifth Amendment rights, and the judge gave a curative instruction to the jury to the effect that no defendant is required to testify and no inference arises from his failure to do so. (Tr. Vol. XI at 76)

The remark was an improper comment on Madden's failure to testify. *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962), rehearing denied 324 F.2d 375 (1963); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Marquez*, 319 F.Supp. 1016 (S.D.N.Y.1970). Since Ford's counsel did not dwell on the point, however, and since the judge immediately upon request of Madden's counsel gave the jury a cautionary instruction, the Court is persuaded that under the circumstances of this case the error was harmless. See *United States v. Kahn*, supra, at 838. See also *United States v. Hansen*, 583 F.2d 325, 331 (7th Cir. 1978), cert. denied 439 U.S. 912, 99 S.Ct. 283, 58 L.Ed.2d 259, wherein the Court, in considering one defendant's attempt in front of the jury to call his codefendant as a witness, which attempt was immediately objected to by the latter, held that "[w]hat happened did nothing more 'than momentarily illuminate the obvious fact that the defendant did not choose to testify.'" While the comment of Ford's attorney did more than that, it did not have so severe an impact as to constitute reversible error.

*Order*

For the foregoing reasons,

IT IS ORDERED that the application of the petitioner Marvin Louis Madden for issuance of a writ of habeas corpus is denied.