960 F.2d 151
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jeffery Lee HARRIS, Petitioner-Appellant,
v.
Darrell A. KOLB, Respondent-Appellee.
 No. 90-3068.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 10, 1992.[1]
Decided April 14, 1992.
 
 Before CUMMINGS and CUDAHY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 
 ORDER
 
 1
 Jeffery Lee Harris filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied Harris' petition. We affirm the denial for the reasons stated in the district court opinion.
 
 
 2
 UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN
 
 
 3
 JEFFREY LEE HARRIS, Petitioner,
 
 
 4
 vs.
 
 
 5
 DARRELL A. KOLB, Superintendent, Respondent.
 
 Case No. 88-C-1058
 ORDER
 I. Introduction
 
 6
 On May 27, 1976, Gervais Myles was found dead in his liquor store, shot once between the eyes. The petitioner, Jeffrey Lee Harris, was convicted of attempted armed robbery party-to-a-crime (PTAC) and first degree murder PTAC in Myles' death. He was sentenced to a term of 5 years on the attempted robbery charge, running consecutive to a term of life imprisonment on the murder charge. Harris sought relief from his conviction by direct appeal and post-conviction motion. The direct appeal was rejected by the Wisconsin Court of Appeals; the post conviction motion was rejected by the state trial court, court of appeals and Wisconsin Supreme Court.
 
 
 7
 Currently pending before this court is Harris' petition for writ of habeas corpus. He raises seven grounds: (1) the evidence was insufficient to convict him of first degree murder PTAC; (2) the conviction for first degree murder, as opposed to third degree felony murder, violated his right to due process; (3) the petitioner was deprived of due process when the trial court improperly instructed the jury; (4) the petitioner was denied a fair trial by the state's alleged failure to fully disclose the plea agreement offered to one of the witnesses against him; (5) the Wisconsin PTAC statute, Wis.Stat. § 939.05, is unconstitutional on its face and as applied; (6) the prosecutor's opening and closing statements contained allegedly prejudicial remarks which denied the petitioner a fair trial; and (7) the petitioner was denied effective assistance of counsel at trial and on appeal. The state admits petitioner has exhausted his state remedies as to each of these issues. For the reasons set forth below, Harris' petition for writ of habeas corpus will be denied.
 
 II. Insufficient Evidence to Convict
 
 8
 Harris' first contention is there was insufficient evidence to convict him of first degree murder PTAC and attempted armed robbery PTAC. Jackson v. Virginia 443 U.S. 307 (1979), provides the appropriate standard of review for such an issue. In Jackson, the Court held that a habeas corpus petitioner is only entitled to relief if, in reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Id. at 319, 324. This standard is applied with explicit reference to the substantive elements of the criminal offenses as defined by state law. Id. at 324 n. 16.
 
 
 9
 The state statutes relevant to first degree murder PTAC are Wis.Stat. §§ 940.01 and 939.05. The former reads in pertinent part, "whoever causes the death of another human being with intent to kill that person is guilty of a Class A felony." The latter reads
 
 
 10
 Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.
 
 
 11
 (2) A person is concerned in the commission of the crime if he:
 
 
 12
 (a) Directly commits the crime; or
 
 
 13
 (b) Intentionally aids and abets the commission of it; or
 
 
 14
 (c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.
 
 
 15
 Wis.Stat. 939.05.
 
 
 16
 The statutes relevant to attempted armed robbery PTAC are Wis.Stat. §§ 943.32(1)(a) and (2), 939.32 and 939.05. Wis.Stat. § 943.32(1)(a) and (2) reads:
 
 
 17
 Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:
 
 
 18
 (a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; ...
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 (2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony.
 
 Section 939.32 states:
 
 22
 An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.
 
 
 23
 Section 939.05 is set forth at length above.
 
 
 24
 The state's brief contains a statement of facts (with citations to the trial record) which may be taken to be what the state finds is the evidence most favorable to the prosecution. The state first relates how on May 27, 1976, at 2:40 P.M., Gervais Myles was found dead in the Great Western Liquor Store in Milwaukee, Wisconsin. He died of a gunshot wound almost directly between his eyes. Near the body was found an open bank bag; coins were scattered about.
 
 
 25
 Herbert Shropshire, the state's key witness, testified as follows. He saw the petitioner at the home of Elmora Howze on May 27, 1976 during the afternoon. Harris and one Charles Hart were talking about making some fast money. Harris and Hart left the apartment together and were joined by Shropshire. Harris and Hart told Shropshire they were going to rob a liquor store and asked Shropshire to stand outside and act as a lookout. Shropshire agreed.
 
 
 26
 Shropshire stood in front of a beauty salon next to the liquor store. Harris and Hart entered the liquor store to look it over. They told Shropshire the store looked "easy." Harris and Hart then reentered the store. Shropshire heard a gunshot. Harris and Hart ran from the store and down the street. Harris was carrying a gun in his hand.
 
 
 27
 Shropshire rejoined Harris and Hart at Elmora Howze's house a short while later. Harris and Hart told Shropshire that "it had went down wrong." Shropshire thought he remembered Hart say "they had to kill a man." Harris and Hart also told Shropshire they dropped the gun while they were running away from the store. At their request, another person present at Howze's house, Donald Carter, retrieved the gun from the bushes.
 
 
 28
 Harris' girlfriend, Elmora Howze, also testified. She stated Harris was at her home on March 27, 1976. At noon, Hart and Shropshire came to the house, later leaving with Harris. Petitioner and Hart returned between 2:00 and 2:30 P.M.. The two appeared to have been running. Shropshire came back at 5:00 P.M.. Harris told her to retrieve a gun that had been dropped, but she found nothing. Later, Donald Carter found the gun. Howze overheard Harris tell Hart that he saved his life. The next day, Harris told Howze there was an accident, and Hart saved his life when the man in the liquor store grabbed him. Howze described how the petitioner had told her the events in the liquor store transpired:
 
 
 29
 He [the petitioner] approached the man [Myles]. The man had his back turned. As he approached, he said the man grabbed him and that he had a scuffle and somehow the man got on the side of him and he did say that the man seemed to have a gun in his back, that he was going to kill him; and somehow he got the man on the right side of him and then he heard a shot and he dropped him. He let him go and he fell.
 
 
 30
 Myles' wife testified that her husband kept a handgun at the store.
 
 
 31
 This evidence, as elicited at trial, was more than sufficient to support a rational trier of fact finding Harris guilty beyond a reasonable doubt, especially when the evidence is examined in the light most favorable to the prosecution. As to the first degree murder PTAC charge, the evidence is clearly sufficient for a jury to conclude Harris either killed Myles himself, intentionally aided and abetted the commission of the murder, or that the murder occurred as a natural and probable consequence of the armed robbery. The evidence is close to overwhelming on the attempted armed robbery PTAC conviction. Harris and Hart planned the robbery of the liquor store, obtained a lookout, "cased" the store and then attempted to rob it. A rational jury could easily find that the robbery "had gone down wrong," Harris and Hart panicked then fled without taking the money.
 
 
 32
 Moreover, Harris does no more than attempt to draw more favorable inferences from the testimony. Basically, he attempts to isolate favorable portions of the testimony to the exclusion of unfavorable portions. For instance, Harris states: "The petitioner did not know that a life was being taken, nor caused the unintentional death of Gervais Myles. Ms. Howze's testimony supports Harris' argument. Ms. Howze's testimony indicates on records that Myles' death occurred as an accident; meaning the perpetrator did not mean to cause Myles' death." Of course, the jury is free to draw its own inferences and conclusions; in this case they rejected Harris'.
 
 
 33
 III. Denial of Due Process by Conviction of First Degree Rather Than Third Degree Murder PTAC
 
 
 34
 Next, Harris argues he was denied due process because he was convicted of first degree, rather than third degree, murder PTAC. He contends the conviction was arbitrary and capricious because the proof required of the state was the same for both charges. Clearly the petitioner is incorrect. The obvious difference between first and third degree murder PTAC is that in order to sustain a first degree murder PTAC conviction, the state must prove that petitioner or his co-actor intentionally took Myles' life. For third degree murder PTAC, the state must only prove that petitioner or his co-actor attempted a felony and caused a death in the process. There is no denial of due process here.
 
 
 35
 IV. Unconstitutionality of Wisconsin Criminal Jury Instructions 400 and 410
 
 
 36
 Harris next contends he was deprived of due process because the trial court gave Wis.J.I.Criminal 400 (Parties to Crime) and 410 (Statement of Co-conspirator). Apparently, Harris is alleging that the instructions were improper because they allowed the state to obtain a first degree murder conviction without proving his intent to kill. However, under longstanding legal theory as well as Wisconsin law, a party to a crime is guilty of that crime whether or not he intended the crime or had the intent of the perpetrator. State v. Stanton, 106 Wis.2d 172, 178, 316 N.W.2d 134 (Ct.App.1982); see also Madden v. Israel, 478 F.Supp. 1234, 1241 (E.D.Wis.1979) (holding that the Wisconsin party-to-a-crime statute does not impermissibly shift the state's burden of proof to the defendant).[1] The trial court properly instructed the jury.
 
 
 37
 V. Inadequate Disclosure of Shropshire's Plea Bargain to the Jury
 
 
 38
 Harris also contends he was denied due process by the state's alleged failure to disclose the full details of witness Herbert Shropshire's "plea bargain." The petitioner claims that the state's alleged "promise" of probation for Shropshire did not come out during the trial, and this somehow tainted his trial. However, it is abundantly clear that the district attorney cannot "give" probation. Moreover, Shropshire had not yet been sentenced. Sentencing is the responsibility of the trial judge, and he is not bound by any recommendation of the parties. Shavie v. State, 49 Wis.2d 379, 390, 182 N.W.2d 505 (1971). There was no due process violation with regard to the handling of Shropshire's plea bargain.
 
 
 39
 VI. Unconstitutionality of Wis.Stat. § 939.05
 
 
 40
 Harris claims Wis.Stat. § 939.05 is unconstitutional on its face and as applied to his case. He complains that he was denied "notice" of the nature and cause of the accusations against him. This claim is without merit. The statutory section at issue has been reviewed by the Wisconsin Supreme Court and found to provide adequate "notice" to the accused of a crime. E.g. State v. Shears, 68 Wis.2d 217, 239-40, 229 N.W.2d 103, (1975); State v. Cydzik, 60 Wis.2d 683, 687, 211 N.W.2d 421, (1973); State v. Copening, 103 Wis.2d 564, 573-74, 309 N.W.2d 850 (Ct.App.1981). This section has also been reviewed and found proper by the federal courts. Madden, 478 F.Supp. at 1241.
 
 VII. Ineffective Assistance of Counsel
 
 41
 Finally, petitioner claims both his trial and appellate counsel were ineffective. Harris has not properly preserved the effectiveness of counsel claim; no evidentiary hearing was held at which the challenged attorneys would testify. State v. Machner, 92 Wis.2d 797, 285 N.W.2d 905 (Ct.App.1979). Petitioner must as a result show cause and prejudice for his procedural default. Murray v. Carrier, 477 U.S. 478, 486 (1986); Rodriguez v. Young, No. 89-1817, slip op. at 9-11 (7th Cir. July 11, 1990). The standard is a high hurdle; petitioner comes nowhere close to clearing it.
 
 
 42
 Moreover, even assuming arguendo that petitioner's claim is properly before the court, he fails to meet the now familiar standards of Strickland v. Washington, 466 U.S. 668 (1984). As the Seventh Circuit recently summarized the test, "The burden upon a defendant pressing such a claim is a 'heavy one.' The defendant must affirmatively establish that a counsel's performance was both constitutionally deficient and that the deficiency prejudiced the outcome of the trial." U.S. v. Slaughter, 900 F.2d 1119, 1124 (7th Cir.1990) quoting Harris v. Reed, 894 F.2d 871, 877 (7th Cir.1990). The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Slaughter, 900 F.2d at 1119 quoting Strickland, 466 U.S. at 689. Failure to establish either one of the two components is fatal to the claim. Id.
 
 
 43
 In this case, like Slaughter, defendant has failed to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner's complains his trial attorney failed to object to allegedly improper remarks of the prosecutor during opening statement and closing argument. The court finds nothing improper in the prosecutor's remarks. Even assuming any of the remarks is improper, petitioner fails to establish that but for his attorney's lack of objection to the allegedly prejudicial statements, the result of his trial would have been different. Petitioner also asserts that his trial counsel failed to call witnesses. Petitioner does not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Nor does Harris argue, much less establish, that but for counsel's failure to call certain witnesses, the result of the trial would have been different. Finally, petitioner's contention that his appellate counsel did not represent him in the manner of a prudent lawyer skilled and versed in the criminal law is meritless. Harris basically asserts that appellate counsel failed to raise certain issues on appeal. Coincidentally, they are the same issues this court finds to be without basis in this order. There was no constitutional infirmity in the appellate attorney's failure to raise such issues, given their lack of merit. Accordingly,
 
 
 44
 IT IS ORDERED that Jeffrey Lee Harris' petition for writ of habeas corpus be and the same is hereby DENIED; and,
 
 
 45
 IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED.
 
 
 46
 Dated at Milwaukee, Wisconsin this 8th day of August, 1990.
 
 
 47
 /s/ BY THE COURT:
 
 
 48
 /s/ J.P. Stadtmueller
 
 
 49
 /s/ U.S. District Judge
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). The appellant filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 The coordinate federal party-to-a-crime statute, 18 U.S.C. § 2, has been repeatedly upheld by the Seventh Circuit. E.g. Levine v. United States, 430 F.2d 641 (7th Cir.1970)